Each side will have 10 minutes. Good morning, and it may please the court. My name is Craig Jerome. I'm appearing on behalf of James Troiano. With the court's permission, I would endeavor to reserve two minutes for rebuttal. Through the first act's changes to Section 3582C1A, Congress sought to expand the use of compassionate release by eliminating the Bureau of Prisons' veto power over such motions. There's no reason to conclude that Congress sought to frustrate that objective by instead instilling that veto power in the Sentencing Commission. In its enabling legislation, Congress did not give the Sentencing Commission exclusive definitional authority over the statutory phrase extraordinary and compelling reasons. Based on the position the Department of Justice has taken in the pending cases of Rutherford and Carter, we can assume that the government also agrees that the Sentencing Commission does not have unbridled power to define extraordinary and compelling circumstances. In the context of Section 3582C1A, Congress gave the Commission only the power to describe what should be considered extraordinary and compelling reasons for sentence reductions and the power to list specific examples of such reasons. Any general policy statement such as Section 1B1.13b6 and C that attempts to define what cannot be considered extraordinary and compelling reasons or that categorically excludes any such reason is not within the scope of authority that Section 994T gives to the Commission. I struggled a bit with this argument because it seems that you're saying you can say what does count but not what doesn't count. But by defining what does count, are you necessarily defining what doesn't count? I mean, if we say we only will take people who are 18 and over, doesn't that mean that you're not taking people under 18? Well, what the enabling legislation does is gives the Sentencing Commission the power to establish criteria that a court should consider to give examples of what does constitute extraordinary and compelling. So if they said, I mean, pretend they're a restaurant and they say 18 and over, doesn't that say someone under 18 is not OK? I just don't really understand this argument about it's OK to say what is but not what is not. Well, if we had a statute that said, for example, the Sentencing Commission can list an example of what are electric cars, and they list 10 electric cars, including a Tesla Model 3 and a Tesla Model S, that doesn't mean that the Sentencing Commission can then say, but a Tesla Model Y is not an electric car. But if they say an electric car is something that doesn't use gas, then I don't understand how. I mean, most definitions have sort of the opposite implied by them, doesn't it? Well, Congress is not, the Sentencing Commission is not empowered to define that term. It's the court's jobs to define and interpret that term. Congress gave the Sentencing Commission not the authority to define the term, but the authority to sort of say, when the courts are looking at this term and defining this term, these are the things courts should consider. Here are some examples of what we, the Sentencing Commission, believe should be considered extraordinary and compelling reasons. I'm trying to understand what the scope of the delegation authority is, because it would seem to me that if the statement, for example, on rehabilitation, if that is cast in stone, then why have a delegation? And if I understand your argument, it's a delegation just goes to basically advisory amplification. Is that right? Sort of, yes. I mean, the rehabilitation alone should not constitute an extraordinary and compelling reason. I think that's Congress telling the Sentencing Commission, hey, when you're coming up with these examples or these criteria, you can't say that rehabilitation alone is extraordinary and compelling. So that's limiting. But can't they say anything else? No, I don't think they can. I mean, I think that that's not the power that was given to them by Congress. They can say, these are things that we think should be extraordinary and compelling, but they can't say. For example, if the Sentencing Commission adopted a policy statement that said, the only extraordinary and compelling reason that qualifies under the statute is somebody who was sexually assaulted by the Bureau of Prisons, that nothing else counts, I mean, I think most courts would have a problem with that and say, well, this goes way beyond what the authority that was delegated to the commission by Congress does if they came up with just one reason or they said, there are no reasons. We don't believe that there's any reason why courts should be able to exercise this power that was given to them by Congress. That would be, seems to me, more of an abuse of discretion continuum versus, I think, the argument you're making here, which is they just categorically, the commission cannot rule something out. Yes. I mean, there's extremes of that that I think you're pointing out that would be an easier case. Well, I think the problem for the court is once you start saying, well, they can do this particular Sentencing Commission, adopt a policy statement that we think is within their discretion, then some future Sentencing Commission could dial that back, and then we wind up in the same position we were in pre-First Step Act, where there's an administrative agency that's controlling what the court's power is under Congress's legislation. So it seems like you're saying, really, there can't be any delegation here. It can only be the statute itself. But I don't think Loper Bright says that. I mean, Loper Bright still envisions that things can be delegated to the discretion of agencies. And then our job is to figure out whether they stayed within the scope of a proper delegation. Why isn't that the situation we're in here? I think that is the situation we're in, is we're asking you to say that what the Sentencing Commission did in these two provisions was not within the scope of their delegated authority. OK, well, so one argument you're making is they can never rule anything out. I think you're not getting a good reception from us on that. So do you have some reason to think that this particular ruling out is improper, as opposed to a categorical, you can never rule things out? Well, I think, in particular, this particular categorical exclusion creates all sorts of problems that conflict with this court's rulings in Chan and Roper, where basically what the Sentencing Commission is saying, OK, if there's a statutory change or a change that comes about by way of case law that's non-retroactive, that's fair game for compassionate release. But if we change the guidelines, that's not fair game. So the situation, oh, sorry. Yeah, but in those cases, it was really because they had determined that the pre-existing policy statement, which did apply to the director of BOP, was not applicable to motions by the prisoners themselves, correct? So the existing policy statement did limit the factors that would constitute extraordinary circumstances. I don't see anything in those cases saying there was a legal problem with that. There was no legal problem with that, at least not in the Ninth Circuit. I mean, more than half the circuits in the country said there was a legal problem with that. And that's the issue in Rutherford and Carter. But that's sort of neither here nor there. The problem with the Sentencing Commission's policy statement is it continues the Ninth Circuit's prior law that says, hey, you can reduce based on changes to statutes that are non-retroactive. You can reduce based on case law that's non-retroactive. But you can't do it based on guideline changes. So if we look at Roper, the situation in there was basically the same situation in this case, where he was a career offender at the time of sentencing. Subsequent to Ninth Circuit case law, his predicate offenses no longer counted for career offender purposes. So he was no longer a career offender under the guidelines. And so the court in that case said, OK, well, we can consider that, or a district court can consider that as an extraordinary and compelling reason. Before your time runs out, can we move from delegation to application in a way? And I want to know, the court acknowledged at various times that there were these changes in the sentencing guidelines. So where is it you think that the court abused its discretion in analyzing the 3553A factors? Well, under 3553A, I think that Chen and Lazarus-Chacon, and I don't know if I got the pronunciation correct in that, but Chen and Lazarus-Chacon say that the court, at the second step or the third step of the compassionate release process, when evaluating the 3553A factors, needs to look at the law as it currently stands, not the law as it was at the time of the original sentencing. And there's no indication in the district court's order in this case that it ever did that. If we look at, the court said in its order, and this is at Exhibits of the Record, page 15, defendant requests that the court rely on non-retroactive changes in law, conduct a full re-evaluation and calculation of each sentencing guideline based on the laws that currently exist, and grant defendant compassionate release. So that second part, we were asking the court to look at the law as it currently exists. And there's no indication that the court ever did that, that the court ever conducted a full re-evaluation or calculation of what the guidelines would be under today's law. The court never talks about the guidelines as they would be today. The court never says, assuming that the defendant's calculations are correct, there's just no further discussion of the guidelines as they are under today's law. At Exhibit 15. What more does the district court need? We know that under our precedent, there doesn't need to be a point-by-point delineation. The court says non-retroactive amendments alone don't provide the basis for compassionate release. So there was an understanding of the shape of the table, so to speak. You think that the district court need to articulate every factor under A? I don't think they needed to articulate every factor under A. But in this order, there's no indication that the court ever considered what the guidelines would be today at all. The court made no findings. The court never discussed what we were proposing to be the guidelines as they currently existed today. And that language that I just quoted suggested that the court was declining to recalculate the guidelines. It says we're asking the court to do that, but the court doesn't do that. Let me see. I'm over my time. I'll still give you a minute for rebuttal, but let's hear from the government. Thank you. Good morning. May it please the court. Marshall Silverberg on behalf of the United States. The way 3582 is written, it says that sentences are final except if there's an exception. And one of the exceptions is whether there's an extraordinary and compelling circumstance to warrant a reduction. But you start off with the situation that a conviction and a sentence are final unless something else applies. So the Sentencing Commission issued its policy statements to define what extraordinary and compelling is because that's what Congress told it to do. Congress said the Sentencing Commission shall define what they are. Now, Mr. Jerome is right. It didn't say they shall define what not is a compelling or extraordinary circumstance. But if you start off with the scenario that only those that are listed can constitute an extraordinary and compelling circumstance, then everything else cannot. I mean, that seems to be just logic. Does Loper-Bright affect how we look at this case at all? I don't see how. I mean, Loper is looking at how an agency applies its own regulations and what deference you give to an agency applying its regulations. I think that's, no, you're thinking of our deference or I don't think you're talking about, I'm talking about Loper-Bright, which changed Chevron deference, which is about interpreting statutes, not their own regulations. Oh, excuse me. But I don't see how because Concepcion comes after Loper, I believe, right? And this is an agency that's promulgating regulations pursuant to a delegation from Congress. They don't have a choice. They have to promulgate regulations. So I don't see how a court can have a de novo review or can second guess all those regulations. In this case, the policy statement that they were delegated to implement. So I guess, can you be a little more specific then? I don't see how it does. Loper-Bright says that we don't defer to agencies' interpretations in their regulations of statutes, at least some of the time. So it could be relevant here, maybe, but I was asking you whether it is. But it doesn't sound like you're familiar with what I'm asking. I was, but I got lost, I think, in all these cases. But I know I did discuss it in the brief, Loper. Right, you have a couple pages on Loper in your brief, as well as Concepcion. Yeah, I really didn't think Loper was an issue in this case. Because I don't see how, even if you assume that a court can decide whether or not an agency, whether the sentencing commission abused its discretion here, how did they possibly abuse its discretion? Let's say you take the reverse. Let's say they had never said that non-retroactive guidelines, non-retroactive changes to the sentencing guidelines could be considered. Let's say they never addressed the issue at all. Then Mr. Jerome or some other defense lawyer will say, because the sentencing commission did not prohibit it, therefore, the district court could consider it. So what the sentencing commission did was take that off the table. Say, you can't consider non-retroactive. You can consider retroactive changes. That falls within 3582C2, I'm sorry, C2. But in terms of what constitutes an extraordinary and compelling under 3582C1, you can't consider it. So what they decided was, and this is what the commission does, is decide what should be the guidelines. I mean, that's delegated to them by the statute. And they decide whether or not guidelines should be made retroactive. That's also delegated to them by the statute. And they decide whether or not the retroactive retroactivity or non-retroactivity should be applied to motions for reduction in sentence. That's all within the delegation from Congress. I mean, if you somehow say that they abused their discretion in how they issued this new policy statement, then you kind of think, does a court serve? You get to all other statutes. What about Department of Interior issuing regulations to decide what constitutes an endangered species? I mean, the court doesn't look at that, do they, Noble? I mean, that's why you have agencies that make those decisions. Would the court let me address the 3553A factors, too? It would only get to that if they went on the first issue, right? OK, thank you very much. OK. So I did want to address, so the government said that only those things that are listed in Section 1B 1.13 count as extraordinary and compelling. But I think that that brings us back to the point. I mean, what Congress gave the commission the power to do was provide a list of examples. And a list of examples is not necessarily all-inclusive. If you ask me to provide a list of examples of great Hawaiian lawyers and I name five people in my list, that doesn't mean that there are no other great Hawaiian lawyers. Just to, I want to give you my reading of Loper-Bright is when Congress gives an agency like the commission a range of discretion, our job is really to determine the outer bounds of that discretion and then decide whether what they did was within those bounds, not whether we would exercise our discretion in the same way. Putting aside your argument about how the commission can't define extraordinary circumstances in the negative by saying what it is not, do you have any other basis for saying that the retroactive changes are out, precluding those is outside the bounds of the commission's discretion? I mean, I think that that's the argument, is that they were not given the power to define that phrase. I mean, there are agency delegations where agencies are given the specific power to define. No substantive indication that Congress said we, the commission can't take that particular factor off the table. I mean, I think that just the language that they use, the language that should be extraordinary and compelling, providing a list of examples, there's nothing in that language that says you can say what should not be or what is not. And just the last point I did want to make is that even if we assume that the Sentencing Commission did have the power, what the Sentencing Commission's statement says is that an amendment cannot be extraordinary and compelling. That's not what we have in this case. We have the confluence of three amendments. So at the very least, the policy statement is ambiguous as to whether multiple amendments can count as extraordinary and compelling, multiple non-retroactive amendments. So I think that at that point, the rule of lenity should kick in, and this court should say that that's an ambiguous policy statement. Don't you kind of have a problem, though, that if you add 0 and 0 and 0, you still get 0? If one of them can't count as anything, then how do adding three together help you? Because you could have a situation like the situation here, where the Sentencing Commission decides, OK, we reduce this guideline by one level. That's not going to be extraordinary and compelling. But if there are 10 amendments that reduce the guidelines by 20 levels, it's reasonable to say, well, that, even though a single one by itself is not extraordinary and compelling, maybe 10 of them together are extraordinary and compelling. And that's what happened in this case, is it's not like there was one of these amendments that reduced his guidelines by a little bit. I mean, his guidelines are like a third of what they were originally. Dave, there's no other questions. We have you over your time. Thank you, both sides, for the helpful arguments. This case is submitted.
judges: McKEOWN, FRIEDLAND, SUNG